**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| U.S. Bank NA, | No. CV-15-02575-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Henry A Varela, Jr., et al., | |
| Defendants. | |

Before the Court is Plaintiff/Counterdefendant U.S. Bank National Association's (U.S. Bank) Motion for Summary Judgment on Bona Fide Purchaser Issue. (Doc. 31.) The motion is fully briefed.[1] For the following reasons, U.S. Bank's motion is granted.

## **BACKGROUND**[2]

This case involves a dispute over title to real property located at 2150 West Chico Lane, Yuma, Arizona 85365 (Property). In 1987, the Property was owned by spouses Frederick and Christine Wood. (Doc. 32, ¶ 1.) The Woods executed a deed of trust encumbering the Property in favor of Merabank, which was recorded on November 17,

---

[1] U.S. Bank's request for oral argument is denied because the issues are adequately briefed and oral argument will not aid the Court's resolution of the motions. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] Many of Defendant/Counterclaimant Henry Varela, Jr.'s responses to U.S. Bank's separate statement of facts are either non-responsive to the factual statements made by U.S. Bank or consist of legal arguments and conclusions. (*see, e.g.*, Doc. 64 at 2, ¶¶ 3-4, 9.) For purposes of this order, the Court accepts as true all factual statements not properly disputed.

1987 (Woods Deed of Trust). (*Id.*, ¶ 2.)

In December 1987, Mr. Wood and Defendant/Counterclaimant Henry Varela, Jr. entered into a residential lease (Woods Lease), which was recorded on December 16, 1991. (*Id.*, ¶¶ 3, 5.) The Woods Lease was signed only by Mr. Wood and Mr. Varela, though it identified both Mr. and Mrs. Woods as lessors and both Mr. Varela and his spouse, Rita, as lessees. (*Id.*, ¶¶ 3-4.) The Woods Lease was for a 30-year term, beginning December 15, 1987, and ending December 14, 2017. (Doc. 34-1 at 12.) It also included a provision granting Mr. Varela an option to purchase the Property at any time during the lease term. (*Id.* at 13-14.)

On February 3, 1992, Bowest Corporation purchased the Property at a trustee's sale held pursuant to the Woods Deed of Trust (First Trustee's Sale). (Doc. 32, ¶ 6.) Later, on August 14, 1992, James Sandoval purchased the Property. (*Id.*, ¶ 7.) Mr. Sandoval subsequently executed a deed of trust encumbering the Property in favor of Casa Blanca Mortgage, Inc., which was recorded on February 28, 2006 (Sandoval Deed of Trust). (*Id.*, ¶ 8.) The Sandoval Deed of Trust covenanted "the Property is unencumbered, except for encumbrances of record[.]" (*Id.*, ¶ 9; Doc. 34-1 at 22.)

Despite this covenant, Mr. Sandoval asserts that he was aware of the Woods Lease when he purchased the Property, and that Mr. Varela continued to reside at the Property and paid rent to Mr. Sandoval. (Doc. 64 at 5-7, ¶¶ 2-3, 5-7.)[3] Mr. Sandoval and Mr. Varela, however, did not execute a written lease on the same terms as the Woods Lease. Instead, the only written lease between Mr. Sandoval and Mr. Varela was entered into so that Mr. Varela could present it to a court as a condition of his release on house arrest

---

[3] Many portions of Mr. Varela's separate statement of facts are unorthodox. For example, instead of stating as a fact that Mr. Sandoval was aware of the Woods Lease when he purchased the property, Mr. Varela quotes lengthy passages from Mr. Sandoval's affidavits and states as a fact that the quoted passages reflect the content of Mr. Sandoval's affidavits. (*See* Doc. 64 at 5-7, ¶¶ 2-3, 5-7.) Obviously, U.S. Bank cannot genuinely dispute that Mr. Sandoval's affidavits say what they say. Fortunately, U.S. Bank took the additional step of responding to the quoted passages themselves, and not just Mr. Varela's statement that the affidavits say what they say. (*See, e.g.*, Doc. 68, ¶¶ 2-3, 5-7.) In the future, counsel for Mr. Varela should be more careful when drafting statements of fact.

after serving thirty-two months in the Yuma County jail (Sandoval Lease). (*Id.* at 5-8, ¶¶ 2, 8.) The Sandoval Lease had a three-year term, from January 1, 2010 to January 1, 2013, did not include a purchase option, and was not recorded. (Doc. 64-5 at 11-14.)

For valuable consideration, U.S. Bank acquired the beneficial interest in the Sandoval Deed of Trust via an assignment recorded on January 31, 2011 (2011 Assignment). (Doc. 32, ¶ 10.) On September 1, 2011, U.S. bank purchased the Property at a trustee's sale held pursuant to the Sandoval Deed of Trust (Second Trustee's Sale). (*Id.*, ¶ 11.) Several years later, on November 1, 2014, Mr. Varela purported to exercise his right to purchase the Property pursuant to the Woods Lease. (*Id.*, ¶ 13.)

Consequently, U.S. Bank initiated this action seeking a declaratory judgment that it has clean title to the Property.[4] (Docs. 1, 43.) Mr. Varela brought a three-count counterclaim. (Doc. 12.) As relevant here, Count I of Mr. Varela's counterclaim alleges breach of contract and seeks, *inter alia*, a declaratory judgment that the purchase option contained in the Woods Lease is binding and enforceable against U.S. Bank, and an award of specific performance.[5] (*Id.* at 4-8.)

The Court granted U.S. Bank leave to file a dispositive motion regarding its alleged status as a bona fide purchaser (BFP) for value. (Doc. 29 at 3.) U.S. Bank timely filed its motion, which seeks summary judgment on its claim for declaratory relief and on Count I of Mr. Varela's counterclaim. (Doc. 31.) In response, Mr. Varela filed a motion pursuant to Fed. R. Civ. P. 56(d) seeking leave to conduct limited discovery, which he argued was necessary to enable him to respond to U.S. Bank's motion. (Doc. 42.) On June 29, 2016, the Court held a telephonic conference regarding the discovery requested in Mr. Varela's Rule 56(d) motion and denied the requests. (Doc. 51.) On July 7, 2016, the Court entered an order formally denying Mr. Varela's Rule 56(d) motion and

---

[4] U.S. Bank later filed an amended complaint that made corrections to the case caption. (Docs. 36, 38, 43.)

[5] Mr. Varela also brings counterclaims for quantum meruit, unjust enrichment, and breach of the covenant of good faith and fair dealing, (Doc. 12 at 8-11), but U.S. Bank has not moved for summary judgment on those counts.

directing him to respond to U.S Bank's motion for summary judgment. (Doc. 53.) U.S. Bank's motion is now ripe for consideration.

## **LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). Furthermore, the party opposing summary judgment "may not rest upon mere allegations of denials of pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir.

2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

## DISCUSSION

U.S. Bank argues that it is entitled to summary judgment for two reasons: (1) Mr. Varela does not have a valid option to purchase the Property and (2) even if Mr. Varela has such an option, it is unenforceable against U.S. Bank because U.S. Bank is a BFP for value without notice of the purchase option. The Court addresses each in turn.

**I. Validity of Purchase Option**

As a matter of law, the purchase option contained in the Woods Lease no longer exists because the Woods Lease was extinguished in 1992 by the First Trustee's Sale. Under A.R.S. § 33-811(E):

> The trustee's deed shall operate to convey to the purchaser the title, interest and claim of the trustee, the trustor, the beneficiary, their respective successors in interest and all persons claiming the trust property sold by or through them, including all interest or claim in the trust property acquired subsequent to the recording of the deed of trust and prior to delivery of the trustee's deed. *That conveyance shall be absolute without right of redemption and clear of all liens, claims or interests that have a priority subordinate to the deed of trust* and shall be subject to all liens, claims or interests that have a priority senior to the deed of trust.

(Emphasis added.) It is undisputed that the Woods Lease was junior to the Woods Deed of Trust. Thus, by operation of Arizona law, the First Trustee's Sale extinguished the Woods Lease, including the purchase option contained therein.[6] *See Wells Fargo Credit*

---

[6] U.S. Bank also argues that the Woods Lease was never valid because it was not signed by Mrs. Woods. (Doc. 31 at 4-5.) "Although in most transactions either spouse alone may bind a marital community, 'joinder' of both spouses is statutorily required to bind the community in certain transactions, including leases of one year or more." *All-Way Leasing, Inc. v. Kelly*, 895 P.2d 125, 128 (Ariz. Ct. App. 1994) (citing A.R.S. § 25-214(C)). The Court is not convinced, however, that the absence of Mrs. Woods' signature from the Woods Lease necessarily renders the document invalid for all purposes. "[C]ontracts falling within A.R.S. § 25-214 are not per se void, only voidable by the nonsigning spouse." *Geronimo Hotel v. Lodge v. Putzi*, 728 P.2d 1227, 1229 (Ariz. 1986). Here, Mrs. Woods does not seek to avoid the Woods Lease; Mr. Varela seeks to enforce the purchase option contained within it. Arguably, however, enforcing the Woods Lease would circumvent Arizona's "legislative judgment that community real property should be transferred or encumbered only by consent of the community[.]" *Id.* at 1230. The Court need not resolve this issue, however, because the Woods Lease, valid or not, was extinguished by the First Trustee's Sale.

- 5 -

*Corp. v. Tolliver*, 903 P.2d 1101, 1104 (Ariz. Ct. App. 1995).

Mr. Varela submits several affidavits from Mr. Sandoval in which he states that he "acknowledged and assumed the obligations and benefits of the [Woods Lease]," and "confirmed" to Mr. Varela that the purchase option contained therein remained binding. (Doc. 64 at 5-7, ¶¶ 2-3, 5-7.) Mr. Sandoval states that he accepted rental payments from Mr. Varela, that he intended for the Woods Lease to operate as the controlling lease document between the two, and that he intended to grant Mr. Varela an enforceable purchase option. (*Id.*) Mr. Varela essentially argues that he and Mr. Sandoval agreed, orally and by course of conduct, to a lease on the same terms as the Woods Lease. But Arizona's statute of frauds, A.R.S. § 44-101(6), "require[s] an option agreement for real property to be in writing." *Chevron U.S.A. Inc. v. Schirmer*, 11 F.3d 1473, 1478 (9th Cir. 1993). This rule also applies to modifications to real estate purchase options. *Best v. Edwards*, 176 P.3d 695, 698 (Ariz. Ct. App. 2008). It is undisputed that Mr. Sandoval and Mr. Varela never committed a purchase option to writing.[7] To the contrary, the Sandoval Lease, which is the only written agreement between Mr. Sandoval and Mr. Varela, does not include a purchase option.

Through his own declaration and affidavits from Mr. Sandoval, Mr. Varela contends that the Sandoval Lease was not intended to have any legal or binding effect. (Doc. 64 at 5-7, ¶¶ 2-3, 5-8.). However, "[t]he parol evidence rule precludes admission

---

[7] Mr. Varela suggests that the lack of a written and signed purchase option should be excused because he partially performed the alleged agreement. (Doc. 63 at 7-8.) The Court disagrees. To prevent the exception from swallowing the rule, the Arizona Supreme Court has made clear that the so-called part-performance exception applies only when the alleged act of part performance is "consistent only with the existence of a contract and inconsistent with other explanations . . . . If the alleged acts do not conclusively establish that a contract exists, reliance upon them would circumvent the evidentiary function of the statute." *Owens v. M.E. Schepp Ltd. P'ship*, 182 P.3d 664, 669 (Ariz. 2008). Mr. Varela offers evidence that he continued to pay rent and maintain and improve the Property after it was purchased by Mr. Sandoval. (Doc. 64 at 5-8, ¶¶ 2-3, 5-7.) No reasonable factfinder could conclude, however, that paying rent and improving real property is consistent only with the existence of a purchase option contract. Indeed, these acts also are consistent with a long-term rental relationship. Because Mr. Varela's part-performance is not conclusive evidence of a purchase option contract between him and Mr. Sandoval, the part-performance exception does not excuse the lack of a written and signed agreement.

of any understandings or representations made prior to or contemporaneously with the written contract if the contract was intended as a final and complete integration of the parties' agreement*." Formento v. Encanto Bus. Park*, 744 P.2d 22, 25 (Ariz. Ct. App. 1987). The Sandoval Lease contains an integration clause that provides: "This document constitutes the entire Agreement between the parties, and no promises or representations, other than those contained here and those implied by law, have been made by Landlord or Tenant. Any modifications to this Agreement must be in writing signed by Landlord and Tenant." (Doc. 64-5 at 14.) Accordingly, the parol evidence rule precludes Mr. Varela from relying on extrinsic evidence of contrary intent or unwritten understandings between the parties.

Moreover, U.S. Bank argues that Mr. Varela is judicially estopped from asserting that the Sandoval Lease was inoperable and nonbinding, and the Court agrees. "Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts." *Russel v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation and citation omitted). When determining whether to apply the doctrine, courts consider factors such as whether (1) the party's later position is clearly inconsistent with his earlier position, (2) the party succeeded in persuading a court to accept his earlier position, and (3) the party asserting his earlier, inconsistent position would unfairly benefit or impose an unfair detriment on the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). The Ninth Circuit "has restricted application of judicial estoppel to cases where the court relied on, or accepted, the party's previous inconsistent position." *Hamilton v. State Farm. Fire. & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (internal quotation and citation omitted). "[J]udicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Id.*

Mr. Varela contends that the Sandoval Lease was drafted as an "accommodation for [l]aw [e]nforcement, [which] required that a form of lease be produced for Mr. Varela to present to the Court for his release," as a "condition of [his] subsequent sixteen[-

]month house arrest in 2009." (Doc. 64 at 5-8, ¶¶ 2, 8.) Thus, Mr. Varela admits that offered the Sandoval Lease to a prior court and that court accepted the lease when it released him on house arrest. Mr. Varela's position in this litigation contradicts his earlier position regarding the Sandoval Lease, and accepting his new position would create the perception that either the first court of this Court was misled. *New Hampshire*, 532 U.S. at 750. Under the circumstances, the Court finds that Mr. Varela is judicially estopped from asserting that the Sandoval Lease was inoperable or nonbinding.

In sum, the undisputed evidence establishes that the Woods Lease was extinguished by the First Trustee's Sale, and that subsequently the only written lease between Mr. Varela and Mr. Sandoval did not include a purchase option. Accordingly, U.S. Bank is entitled to summary judgment because Mr. Varela does not have a valid purchase option.

**II. BFP for Value Without Notice**

Assuming, *arguendo*, that Mr. Varela has a valid purchase option, or that genuine issues of fact preclude judgment on that issue, U.S. Bank still is entitled to summary judgment because it is indisputably a BFP for value without notice of Mr. Varela's alleged purchase option. Under Arizona law, "[a]ll bargains, sales and other conveyances whatever of lands, tenements and hereditaments . . . shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law." A.R.S. § 33-412(A). "No instrument affecting real property gives notice of its contents to subsequent purchasers or encumbrance holders for valuable consideration without notice, unless recorded as provided by law in the office of the county recorder of the county in which the property is located." A.R.S. § 33-411(A).

Mr. Varela identifies no recorded document giving U.S Bank constructive notice that he held a superior right to purchase the Property at the time U.S. Bank acquired it. Indeed, the Sandoval Deed of Trust covenanted that "the Property is unencumbered, except for encumbrances of record," of which there are none. The Woods Lease,

- 8 -

recorded in 1991, was extinguished the following year by the First Trustee's Sale, and the alleged oral purchase option agreement between Mr. Varela and Mr. Sandoval necessarily could not have been recorded.

Instead, Mr. Varela argues that U.S. Bank was on actual notice of the purchase option agreement. (Doc. 63 at 8-9.) But the only evidence Mr. Varela provides to support this contention is an affidavit from Mr. Sandoval in which he states that he "disclosed to the Lender, at the time of the Loan to me in February 2006, that I had a binding Residential Lease with Mr. Varela, that included an option to purchase the real property[.]" (Doc. 64 at 6, ¶ 3.) At that time, however, the lender was Casa Blanca Mortgage, not U.S. Bank. Mr. Varela offers no evidence that U.S. Bank was on actual or constructive notice of his alleged oral purchase option agreement with Mr. Sandoval prior to U.S. Bank acquiring its interest in the Property.

Mr. Varela also attempts to cast doubt on U.S. Bank's superior property interest, arguing that "[t]here are no documents assigning the February 15, 2006 Casa Blanca Mortgage Loan to [U.S. Bank] other than the Assignment of Deed of Trust from the 'Mortgage Electronic Registration Systems, Inc.' and the Mortgage Loan Schedule to the June 1, 2006 Pooling and Servicing Agreement." (Doc. 64 at 8-9, ¶ 9; 10, ¶ 16; 3, ¶ 10.) This argument is puzzling because Mr. Varela admits that some documents evidencing the assignment exist. Indeed, U.S. Bank submitted the 2011 Assignment with its motion. (Doc. 32, ¶ 10; Doc. 34-1 at 40-41.) Mr. Varela essentially faults U.S. Bank for not also submitting the Mortgage Loan Schedule to the June 1, 2006 Pooling and Servicing Agreement. Mr. Varela submits no evidence, however, undermining the authenticity of the 2011 Assignment, nor does he cite any authority that a recorded assignment is insufficient evidence that the beneficial interest in a deed of trust was transferred.

Finally, Mr. Varela questions whether U.S. Bank paid for the Property at the Second Trustee's Sale, citing U.S. Bank's statement that it "paid in cash or in the form of a credit bid[.]" (Doc. 63 at 9; Doc. 32, ¶ 12.) This argument is meritless. The trustee's deed upon sale states that U.S. Bank purchased the Property with a bid of $199,000 cash.

(Doc. 34-1 at 43.) "A beneficiary's credit bid, whether full or partial, is actual payment to the beneficiary to the extent of the bid, just as a cash bid and payment by a non-beneficiary would be." *M & I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 868 (D. Ariz. 2011.) Moreover, the trustee's deed upon sale creates a "presumption of compliance with the requirements of the deed of trust and [Arizona law] relating to the exercise of the power of sale and the sale of the trust property, including . . . the conduct of the sale." A.R.S. § 33-811(B). Without supporting evidence, Mr. Varela cannot now argue that the trustee's sale was invalid.[8]

In sum, the Woods Lease, which was extinguished by the First Trustee's Sale in 1992, was the only written and recorded document granting Mr. Varela a purchase option. At the time U.S. Bank acquired its interest in the Property, no recorded document put it on notice that Mr. Varela and Mr. Sandoval had orally agreed to be bound by the otherwise extinguished purchase option, and there is no evidence that U.S. Bank was put on actual notice of this alleged oral agreement. Accordingly, even if Mr. Varela has a valid purchase option, it is unenforceable against U.S. Bank as a matter of law because U.S. Bank acquired the Property as a BFP for value without notice of the alleged purchase option. Summary judgment in favor of U.S. Bank is warranted.

## **CONCLUSION**

For the foregoing reasons, U.S. Bank is entitled to summary judgment on its complaint for declaratory relief and on Count I of Mr. Varela's counterclaim.

/ / /

/ / /

---

[8] In the concluding section of his response memorandum, Mr. Varela argues that U.S. Bank must compensate him "for the equity interests created by his payments on the Property, and his improvements and maintenance of the Property for the past twenty-nine years," should it be determined that U.S. Bank is a BFP for value without notice. (Doc. 63 at 11.) Mr. Varela cites no authority for his position, which contradicts provisions in both the Woods Deed of Trust and the Sandoval Deed of Trust encumbering the Property and "all the improvements now or hereafter erected" on it. (Doc. 34-1 at 4, 22.) Pursuant to the Sandoval Deed of Trust and the Second Trustee's Sale, U.S. Bank acquired superior title to all improvements to the Property.

**IT IS ORDERED** that U.S. Bank's Motion for Summary Judgment on Bona Fide Purchaser Issue, (Doc. 31), is **GRANTED**.

Dated this 9th day of December, 2016.

Douglas L. Rayes
United States District Judge