WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| U.S. Bank NA, | No. CV-15-02575-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Henry A Varela, Jr., et al., | |
| Defendants. | |

Before the Court is Defendant/Counterclaimant Henry A. Varela, Jr.'s Motion for Reconsideration of the Court's Order Granting U.S. Bank's Motion for Summary Judgment on Bona Fide Purchaser Issue and Count I of Defendant's Counterclaim. (Doc. 91.) For the following reasons, Mr. Varela's motion is denied.[1]

## **BACKGROUND**[2]

This case involves a dispute between Mr. Varela and Plaintiff/Counterdefendant U.S. Bank National Association (U.S. Bank) over title to certain real property in Yuma, Arizona (Property). Initially, spouses Frederick and Christine Wood owned the Property, which was encumbered by a deed of trust recorded in November 1987 (Woods Deed of

---

[1] Mr. Varela's request for oral argument is denied because oral argument will not aid the Court's resolution of the motion. LRCiv 7.2(f).

[2] The relevant factual background is taken from the Court's December 9, 2016 order granting U.S. Bank's Motion for Summary Judgment on Bona Fide Purchaser Issue. (Doc. 87.)

1  Trust).  In December 1987, Mr. Wood and Mr. Varela entered into a residential lease
2  (Woods Lease), which was recorded several years later in December 1991.  Only Mr.
3  Wood and Mr. Varela signed the Woods Lease, though it identified Mr. and Mrs. Woods
4  as lessors and Mr. Varela and his spouse as lessees.  The Woods Lease had a 30-year
5  term and granted Mr. Varela an option to purchase the Property during that time.

6  In February 1992, the Property was sold at a trustee's sale (First Trustee's Sale).
7  The Property was sold again in August 1992, this time to James Sandoval.  Mr. Sandoval
8  executed a deed of trust encumbering the Property in favor of his lender, Casa Blanca
9  Mortgage, Inc., which was recorded in February 2006 (Sandoval Deed of Trust).  The
10 Sandoval Deed of Trust covenanted "the Property is unencumbered, except for
11 encumbrances of record[.]"

12 Nonetheless, Mr. Sandoval was aware of the Woods Lease when he purchased the
13 Property and Mr. Varela continued to reside at the Property and pay rent.  Mr. Sandoval
14 and Mr. Varela did not execute a written lease on the same terms as the Woods Lease.
15 Instead, the only written lease between Mr. Sandoval and Mr. Varela was entered into so
16 that Mr. Varela could present it to a court as a condition of his release from jail on house
17 arrest (Sandoval Lease).  The Sandoval Lease did not include a purchase option and was
18 not recorded.

19 In September 2011, U.S. Bank purchased the Property at a trustee's sale (Second
20 Trustee's Sale).  Several years later, Mr. Varela purported to exercise his right to
21 purchase the Property.  As a result, U.S. Bank initiated this action seeking a declaratory
22 judgment that it has clean title.  Mr. Varela brought a three-count counterclaim, Count I
23 of which alleged breach of contract and sought, *inter alia*, a declaratory judgment that the
24 purchase option contained in the Woods Lease is enforceable against U.S. Bank and an
25 award of specific performance.  U.S. Bank moved for summary judgment on its claim for
26 declaratory relief and on Count I of Mr. Varela's counterclaim and, on December 9,
27 2016, the Court granted U.S. Bank's motion.  Mr. Varela now moves for reconsideration.
28

**LEGAL STANDARD**

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner,* 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.,* 689 F. Supp. 1572, 1573 (D. Haw. 1988). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through—rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (quoting *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

**DISCUSSION**

Mr. Varela does not present newly discovered evidence or argue that there has been an intervening change in controlling law. He, instead, argues that the Court committed clear error and its order was manifestly unjust. He raises four distinct arguments, none of which warrant reconsideration.

**I. Judicial Estoppel**

First, Mr. Varela contends that the Court clearly erred when it accepted "new evidence and a legal theory of judicial estoppel concerning the Sandoval Lease," introduced by U.S. Bank in its reply memorandum. (Doc. 91 at 2-3.) The Court disagrees. U.S. Bank did not introduce new evidence with its reply memorandum; all evidence relied upon by U.S. Bank in its reply was introduced earlier, either with its motion for summary judgment or with Mr. Varela's response thereto. (Docs. 34, 40, 64.) Nor was U.S. Bank's judicial estoppel argument outside the scope of reply. Though arguments raised for the first time in a reply brief generally will not be considered, arguments made in response to those raised in the opposing party's brief are permissible rebuttal arguments. *See Beckhum v. Hirsch*, No. CV 07-8129-PCT-DGC (BPV), 2010

WL 582095, at *8 (D. Ariz. Feb. 17, 2010). Mr. Varela argued in his response brief that the Sandoval Lease was not intended by the parties to be binding and enforceable, and was instead prepared as an accommodation to law enforcement as a condition of his release on house arrest. (Doc. 63 at 4-5.) U.S. Bank rebutted by arguing that Mr. Varela was judicially estopped from disavowing the Sandoval Lease because he had presented it to a prior court, which required that a lease be produced as a condition of Mr. Varela's release. (Doc. 67 at 3-4.) The Court did not clearly err by considering U.S. Bank's rebuttal argument.

Moreover, even if it was error to consider U.S. Bank's judicial estoppel argument, such error was harmless. Notably, Mr. Varela does not argue in his motion for reconsideration that the Court's judicial estoppel analysis was erroneous. Further, judicial estoppel was not the sole basis for the Court's ruling. The Court first concluded that the purchase option granted to Mr. Varela was extinguished in 1992 by the First Trustee's Sale. (Doc. 87 at 5.) The Court explained that Arizona's statute of frauds, A.R.S. § 44-101(6), requires a real estate purchase option agreement to be in writing, and then found that no written purchase option was executed after the Woods Lease was extinguished. (*Id.* at 6.) Finally, the Court noted that the Sandoval Lease, which was the only written agreement post-dating the First Trustee's Sale, did not include a purchase option, that the parol evidence rule precluded extrinsic evidence of contrary intent or unwritten understandings between Mr. Sandoval and Mr. Varela, and that Mr. Varela was judicially estopped from asserting that the Sandoval Lease was inoperable or nonbinding. (*Id.* at 6-7.) Even if the Court were to ignore U.S. Bank's judicial estoppel argument, the fact remains that no written purchase option was executed after the First Trustee's Sale and the parol evidence rule precludes Mr. Varela from disavowing the Sandoval Lease by pointing to extrinsic evidence of contrary intent. Mr. Varela's argument therefore does not provide a basis for reconsidering the Court's summary judgment order.

**II. Sufficiency of Mr. Varela's Factual Denials**

Next, Mr. Varela argues that Court clearly erred "when it failed to acknowledge

- 4 -

[his] denial of [U.S. Bank's] Statement of Facts." (Doc. 91 at 3.) Specifically, Mr. Varela quarrels with footnote 2 of the Court's summary judgment order, which states:

> Many of [Mr. Varela's] responses to U.S. Bank's separate statement of facts are either non-responsive to the factual statements made by U.S. Bank or consist of legal arguments and conclusions. (*See, e.g.*, Doc. 64 at 2, ¶¶ 3-4, 9.) For purposes of this order, the Court accepts as true all factual statements not properly disputed.

(Doc. 87 at 1 n.2.) Mr. Varela contends that the record is unclear as to which of his responses were deemed improper. To the extent Mr. Varela seeks clarification on this point, the Court will oblige. Paragraphs 3, 4, 9, and 14 of Mr. Varela's Controverting Statement of Facts were deemed either to be non-responsive to the facts asserted by U.S. Bank, to contain legal arguments and conclusions rather than facts, or both. Before explaining further, an examination of this Court's local rules provides useful context.

Local Rule of Civil Procedure 56.1 governs summary judgment motions. As relevant here, the rule provides:

> (a) Separate Statement of Facts. Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion. The separate statement should include only those facts that the Court needs to decide the motion. Other undisputed facts (such as those providing background about the action or the parties) may be included in the memorandum of law, but should not be included in the separate statement of facts. Each material fact in the separate statement must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.). A failure to submit a separate statement of facts in this form may constitute grounds for the denial of the motion.
>
> (b) Controverting Statement of *Facts*. Any party opposing a motion for summary judgment must file a statement, *separate from that party's memorandum of law*, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set

> forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

(Emphasis added.) The rule distinguishes between a separate statement of facts and a memorandum of law because the two documents serve different purposes. The court should be able to glean which facts, if any, are genuinely disputed by reviewing the parties' separate and controverting statements of facts. Working from that baseline of undisputed facts, the court then looks to the parties' memoranda of law to determine whether any genuinely disputed facts are material and whether the movant is entitled to judgment as a matter of law. Thus, factual disputes should be aired in the parties' separate statements, while legal disputes should be addressed in their memoranda of law. The court may deem a movant's separate statement of facts to be true if the non-moving party does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x, 734, 735 (9th Cir. 2010).

In Paragraph 3 of its Separate Statement of Facts, U.S. Bank asserted, "Sometime around December 1987, Mr. Wood and [Mr. Varela] . . . entered into a lease agreement with an option to purchase the Property . . . ." (Doc. 32, ¶ 3.) In Paragraph 4, U.S. Bank stated, "Mrs. Wood did not sign the Lease/Option." (*Id.*, ¶ 4.) To support these factual assertions, U.S Bank cited to a document entitled "Residential Lease" executed on December 15, 1987 and signed by Mr. Wood and Mr. Varela, but not by Mrs. Wood or Mrs. Varela. (Doc. 34-1 at 11-14.) Mr. Varela responded that these facts were disputed as to the ability of Mr. Wood and Mr. Varela to bind their respective martial communities. (Doc. 64 at 2, ¶¶ 3-4.) The Court found his controverting statements to be non-responsive because Mr. Varela did not address the assertions U.S. Bank made. Mr. Varela neither admitted nor disputed that he and Mr. Wood entered into a lease in December 1987, or that Mrs. Wood did not sign the document.[3] Instead, Mr. Varela

---

[3] Indeed, on the latter point it is beyond dispute that Mrs. Woods did not sign the lease. Mr. Varela proffered no alternative form of the document that contained Mrs. Wood's signature.

- 6 -

1    asserted a legal argument over whether Mr. Wood and Mr. Varela could bind their
2    respective marital communities in the absence of their spouses' signatures.  Notably, the
3    Court did not ignore either party's legal arguments on this point.  (Doc. 87 at 5 n.5.)  It
4    merely accepted as true that Mr. Wood and Mr. Varela entered into a lease in December
5    1987 that included a purchase option, and that Mrs. Wood did not sign it.
6         Next, in Paragraph 9 its Separate Statement of Facts, U.S. Bank asserted:

> In the Sandoval Deed of Trust, Mr. Sandoval states the following:
>
> BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and covey the Property and that the Property is unencumbered, except for encumbrances of record . . . .

(Doc. 32, ¶ 9.)  To support this assertion, U.S. Bank cited to the Sandoval Deed of Trust, which indisputably includes the passage quoted above.  (Doc. 34-1 at 22.)  Yet Mr. Varela stated that he disputed this fact:

> as an incomplete statement of [Mr.] Sandoval's statement of February 15, 2006, namely [Mr.] Sandoval has stated that he "disclosed to the Lender, at the time of the Loan to me in February, 2006, that I had a binding Residential Lease with Mr. Varela, that included an option to purchase which had previously been recorded with the Yuma County Recorder's Office."

(Doc. 64 at 2-3, ¶ 9.)  For support, Mr. Varela cited to Mr. Sandoval's affidavit, in which he states that he disclosed—apparently orally because there is no evidence of a written disclosure—the existence of the Woods Lease to his lender in February 2006.  (Doc. 64-3.)

     Mr. Varela's controverting statement is non-responsive to U.S. Bank's factual assertion, which only pertained to the content of the Sandoval Deed of Trust.  Mr. Varela cannot genuinely dispute that the Sandoval Deed of Trust contains the passage quoted in Paragraph 9 of U.S. Bank's Separate Statement of Fact.  Instead, Mr. Varela offered "additional facts" that he believed "establish[ed] a genuine issue of material fact or otherwise preclude[d] judgment in favor" of U.S Bank.  LRCiv 56.1(b).  The Local

Rules, however, require such "additional facts" to be set forth "in a separately numbered paragraph." *Id.* Nonetheless, the Court did not ignore Mr. Varela's evidence and arguments about Mr. Sandoval's alleged disclosure in 2006. (Doc. 87 at 9.) The Court merely accepted as true that the Sandoval Deed of Trust contained the passage quoted in Paragraph 9 of U.S. Bank's Separate Statement of Facts.

Finally, shortly after filing its motion for summary judgment, U.S. Bank submitted a Supplemental Statement of Facts containing six additional paragraphs. (Doc. 40.) In relevant part, the first five paragraphs stated:

> 1. On or about January 2, 2010, [Mr.] Varela and [Mr.] Sandoval . . . executed a Residential Lease with a term beginning on January 1, 2010 and ending on January 1, 2013 ("New Lease"). . . .
>
> 2. The monthly rent for the New Lease is $1,000, while the rent under the previous Lease/Option varied based upon the amount of the Woods' monthly loan payment. . . .
>
> 3. Clause 25 of the New Lease specifically states: "This document constitutes the entire Agreement between the parties, and no promises or representations, other than those contained here and those implied by law, have been made by Landlord or Tenant. Any modifications to this Agreement must be in writing signed by Landlord and Tenant." . . .
>
> 4. Notably, the New Lease does not contain any reference to an option to purchase the Property. . . .
>
> 5. Varela made monthly payments of $1,000 under the New Lease. . . .

(*Id.*) In a single paragraph, Mr. Varela responded that he disputed all five of these supplemental facts:

> because the document [U.S. Bank] labels as the "[n]ew Lease" was never intended to be a lease by the parties, nor was it ever a binding obligation that altered in any way the Residential Lease. But rather it was strictly a nonbinding accommodation for Law Enforcement.

(Doc. 64 at 4, ¶ 14.)

This controverting statement suffers several defects. First, Mr. Varela did not comply with LRCiv 56.1(b)'s requirement that the opposing party respond to each of the

- 8 -

moving party's separate statements of fact in separate and correspondingly numbered paragraphs. Second, Mr. Varela's assertion that the Residential Lease executed by him and Mr. Sandoval in January 2010 was not a binding obligation and did not alter the Woods Lease is a legal conclusion. Finally, aside from asserting that the he and Mr. Sandoval did not intend for the Residential Lease to be a lease, Mr. Varela failed to respond to most of the factual assertions made by U.S. Bank. For example, U.S. Bank stated that the Residential Lease had a term beginning on January 1, 2010 and ending on January 1, 2013, contained an integration clause, and did not include a purchase option. These facts are demonstrably and indisputably true, (*see* Doc. 40-1 at 3-6), and it would not have been inconsistent for Mr. Varela to admit these facts in his Controverting Statement of Fact while also arguing in his memorandum of law that the Residential Lease had no legal effect. Indeed, the Court did not ignore these arguments in its order. (Doc. 87 at 6-7.) The Court merely accepted as true that the Residential Lease contained the information cited by U.S. Bank.[4]

In sum, although Mr. Varela's request for clarification is well-taken, his complaints regarding footnote 2 of the Court's summary judgment order do not provide a basis for reconsideration.

**III. Sufficiency of Mr. Varela's Additional Controverting Facts**

Mr. Varela also argues that the Court clearly erred in "providing less weight to Mr. Varela's Controverting Statement of Facts due to the 'unorthodox' writing style of Mr. Varela's legal counsel[.]" (Doc. 91 at 2.) Mr. Varela refers to footnote 3 of the Court's summary judgment order, which states:

> Many portions of Mr. Varela's separate statement of facts are unorthodox. For example, instead of stating as a fact that Mr. Sandoval was aware of the Woods Lease when he purchased the property, Mr. Varela quotes lengthy passages from Mr. Sandoval's affidavits and states as a fact that the quoted passages reflect the content of Mr. Sandoval's affidavits. (*See* Doc. 64 at 5-7, ¶¶ 2-3, 5-7.) Obviously, U.S. Bank

---

[4] The Court also notes that it did not rely on either party's facts regarding the precise amount of rent Mr. Varela paid to Mr. Sandoval. This information was not material to the Court's analysis.

- 9 -

> cannot genuinely dispute that Mr. Sandoval's affidavits say what they say. Fortunately, U.S. Bank took the additional step of responding to the quoted passages themselves, and not just Mr. Varela's statement that the affidavits say what they say. (*See, e.g.*, Doc. 68, ¶¶ 2-3, 5-7.) In the future, counsel for Mr. Varela should be more careful when drafting statements of fact.

(Doc. 87 at 2 n.3.) His contention, however, that the Court "discounted" or "provid[ed] less weight" to his Controverting Statement of Facts reflects a misreading of the Court's order. The Court's order addressed the statements made by Mr. Sandoval and Mr. Varela in their respective affidavits, and nowhere did the Court suggest that it discounted or assigned comparably less weight to Mr. Varela's controverting facts. (Doc. 87 at 2-3, 6-8, 9.) The Court merely noted that Counsel's approach made the filing more difficult both for U.S. Bank to respond to and for the Court to review.

For example, Paragraph 2 of Mr. Varela's additional controverting facts stated, in relevant part:

> 2. The May 3, 2013 Affidavit of [Mr.] Sandoval states in part that:
>
>> 2. That I purchased the real property at 2150 W. Chico Ln., Yuma, AZ knowing full well that there was an existing Residential Lease, which had previously been recorded on December 16, 1991 at the Yuma County Recorder's Office of Yuma County under docket 1772, at pages 869 through 872. . . .
>>
>> 3. That I acknowledged and confirmed to [Mr. Varela] that the Residential Lease had an option to purchase in favor of [Mr. Varela], which was dated December 15, 1987 being previously entered into by [Mr. Varela] and [Mr. Wood], creating a legal binding interest in the real property by conveying a legally binding option to purchase in favor of [Mr. Varela]. . . .
>>
>> 4. That there was an additional lease entered on January 1, 2010 that would terminate on January 1, 2013. This lease did not supersede, nor was it intended to be an addendum to the recorded Residential Lease. Neither I, nor Mr. Varela intended this lease to have any force and effect of altering the Residential Lease. It was merely signed as an *(sic)* nonbinding accommodation for Law Enforcement, who required that a form of lease be produced for Mr. Varela to present to the Court for his release. It was not intended by me or Mr. Varela to have any legal or binding effect on the Residential Lease.

> 5. That the only controlling legal document pertaining to the lease of the real property, as far as Mr. Varela and I are concerned is the Residential Lease recorded in 1991 in the Yuma County Recorders Office of Yuma County. . . .
>
> 6. That Mr. Varela had previously satisfied every aspect of the Residential Lease, and was entitled to exercise his option to purchase the real property. . . .

(Doc. 64 at 5, ¶ 2 (emphases omitted).) Strictly speaking, this paragraph merely asserts that Mr. Sandoval's affidavit contains the quoted information—it does not assert that the quoted information is, in fact, true. It also is unclear whether Mr. Varela intended for each subparagraph in Mr. Sandoval's affidavit to constitute a "separately numbered paragraph" for purposes of LRCiv 56.1(b). Moreover, many of these subparagraphs contain impermissible legal conclusions. For example, Mr. Sandoval stated that Mr. Varela "was entitled to exercise his option to purchase the real property," which was the central legal dispute in this case. The Court's task would have been far more difficult had U.S. Bank merely admitted that Mr. Sandoval's affidavit contained the quoted passages without also addressing the content itself. Footnote 3 of the Court's order merely notes this reality; it supplies no basis for reconsideration.

**IV. Manifest Injustice**

Lastly, Mr. Varela argues:

> The Court should reconsider its ruling to prevent manifest injustice of allowing the unconscionable acts of a rogue Yuma County Deputy, and an overreaching Yuma County Deputy County Attorney in prosecuting and imprisoning Mr. Varela for two and half years for a crime he never committed. This injustice lead to the need for the Sandoval Lease, which ultimately will be the basis for Mr. Varela losing his home if the Court does not reconsider its decision and allow a jury or Mr. Varela's peers deciding the outstanding questions of fact.

(Doc. 91 at 4.) This argument is misguided for several reasons. First, as already noted, the Sandoval Lease was not the sole basis for the Court's ruling. Had the Court ignored the Sandoval Lease entirely, it still would have found that no purchase option satisfying Arizona's statute of frauds survived the First Trustee's Sale. Second, in granting U.S. Bank's summary judgment order, the Court necessarily concluded that there were no

- 11 -

genuine issues of material fact. Thus, there are no outstanding questions of fact for Mr. Varela's peer to decide. Finally, Mr. Varela cites no authority that the Court may ignore the legal effect of a trustee's sale, the statute of frauds, or U.S. Bank's status as a bona fide purchaser for value because Mr. Varela believes he previously was falsely prosecuted and imprisoned in Yuma County. Mr. Varela's argument therefore provides no basis for reconsideration.

**IT IS ORDERED** that Defendant/Counterclaimant Henry A. Varela, Jr.'s Motion for Reconsideration of the Court's Order Granting U.S. Bank's Motion for Summary Judgment on Bona Fide Purchaser Issue and Count I of Defendant's Counterclaim, (Doc. 91), is **DENIED**.

Dated this 20th day of January, 2017.

Douglas L. Rayes
United States District Judge